[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISMISS
The court in this case is faced with a motion to dismiss which arises in a rather unusual fashion. The original complaint was brought against John J. Armstrong, Pamala Richards, George Wezner, Richard I. Floodquist, Leonard Rubbo, John Negron, John Doe #1, C.Z. Ahmed, Ronald Potter, Thomas M. Conway, Sr., John Blanc, John Wynn, John Doe #2, John LaMare, and John Riccio, all in their official capacities. In his original complaint the plaintiff sought certain injunctive relief against the defendants.
In accordance with its policy to do so, the Attorney General's Office filed an appearance for all defendants as they were sued in their official capacities rather than their individual capacities and sought injunctive relief rather than money damages.
Subsequent to a status conference which was held on September 24, 1999 the court, Pittman, J., gave the plaintiff permission to amend his complaint. On April 26, 2000 the plaintiff presented the court, DeMayo, J., with a 256 page amended complaint. In his amended complaint the plaintiff adds as defendants Vincent Santopietro, John Shoemaker, E. Saundry, John Capasso, John Doe #3, John Austin, John Pelkey, David G. Testa and John Tolisano and sues all defendants in both their officialand individual capacities. In his amended complaint, in addition to the injunctive relief sought in the original complaint, the plaintiff claimsmoney damages of 35 million dollars and punitive damages of 70 million dollars. Rather than having such a voluminous amended complaint served upon the newly added defendants with the attendant cost to the state, Judge DeMayo invited the defendants through the Attorney General's Office to file a motion to dismiss since the defendants were raising the defense of lack of subject matter jurisdiction.
In his amended complaint, the plaintiff alleges the following facts. The plaintiff was arrested, tried and convicted by a jury of sexual assault and risk of injury to a minor. Upon entering CCI, the plaintiff alleges that he became the target of continuous harassment by the correctional officers and their supervisors; that the harassment was condoned by the high ranking officials associated with CCI; and that part of the ongoing harassment includes the filing of false grievances by the correctional officers against the plaintiff that were upheld by the high ranking officials, as well as grievances filed by the plaintiff against the correctional officers and their supervisors that have been ignored by the high ranking officials. CT Page 12556
The counts of the amended complaint are against individuals for varying allegations that sound in intentional infliction of emotional distress; violations of the plaintiff's rights under both the state and federal constitutions; cruel and unusual punishment under the federal constitution; violations of the DOC's grievance procedures; and violations of state and federal statutes.
On May 15, 2000, the defendants, represented by the attorney general's office, moved to dismiss the amended complaint, essentially because the plaintiff fails to allege any cognizable claims against the defendants. The defendants amended their motion to dismiss on September 1, 2000, on the grounds that the court lacks subject matter jurisdiction to entertain the action against the defendants because the action is barred by the doctrine of sovereign immunity; the action is barred by General Statutes § 4-165 and the plaintiff failed to exhaust his administrative remedies under that statute; the plaintiff lacks standing to bring suit because his claims fail to identify a cognizable injury or remedy; no court has recognized a state constitutional right for prisoners to sue for money damages under the state constitution outside of article first, §§ 7 and 9; Binette v. Sabo, 244 Conn. 23, 24, 710 A.2d 688 (1998); and qualified immunity. The motion is accompanied by a supporting memorandum of law. On July 13, 2000, the plaintiff filed his objection to the motion, accompanied by a supporting memorandum of law, and the defendants filed a reply brief. The matter was heard by the court on June 12, 2001.
"A motion to dismiss . . . properly attacks the jurisdiction of the court. . . . The motion to dismiss shall be used to assert . . . lack of jurisdiction over the subject matter. The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Brackets omitted; citations omitted; internal quotation marks omitted.) Ferreira v. Pringle, 255 Conn. 330, 346,766 A.2d 400 (2001). "[I]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) Lawrence Brunoli, Inc. v. Branford,247 Conn. 407, 410-11, 722 A.2d 271 (1998).
 I. Sovereign Immunity
The defendants first assert that the court lacks subject matter jurisdiction over the plaintiff's action because of the doctrine of sovereign immunity. "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) Federal DepositCT Page 12557Ins. Corp. v. Peabody, N.E., 239 Conn. 93, 99, 680 A.2d 1321 (1996). "Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction. . . . The point has been frequently made." (Internal quotation marks omitted.) Id.
"We have . . . recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. . . . In its pristine form the doctrine of sovereign immunity would exempt the state from suit entirely, because the sovereign could not be sued in its own courts and there can be no legal right as against the authority that makes the law on which the right depends." (Citation omitted; internal quotation marks omitted.) Antinerella v. Rioux,229 Conn. 479, 487, 642 A.2d 699 (1994). "It is settled law in Connecticut that the state is immune from suit unless, by appropriate legislation, it authorizes or consents to suit. . . . The state's sovereign right not to be sued may be waived by the legislature, provided clear intention to that effect is disclosed by the use of express terms or by force of a necessary implication." (Citations omitted; internal quotation marks omitted.) Owner-Operators Independent Drivers Assn. ofAmerica v. State, 209 Conn. 679, 684, 553 A.2d 1104 (1989). In the present case, the plaintiff fails to allege a statute abrogating the doctrine of sovereign immunity for the defendants.
"It does not necessarily follow, however, that every action in which state officials or members of state agencies are named defendants and designated by official titles should be treated as an action against the state such as to clothe the defendants with immunity from suit. . . . Sovereign immunity does not bar suits against state officials acting in excess of their statutory authority or pursuant to an unconstitutional statute. . . . In those cases in which it is alleged that the defendant officer is proceeding . . . in excess of his statutory authority, the interest in the protection of the plaintiff's right to be free from the consequences of such action outweighs the interest served by the sovereign immunity doctrine. . . . Where [however] no substantial claim is made that the defendant officer is acting pursuant to an unconstitutional enactment or in excess of his statutory authority, the purpose of the sovereign immunity' doctrine requires dismissal of the suit for want of jurisdiction." (Citations omitted; internal quotation marks omitted.) Shay v. Rossi, 253 Conn. 134, 168-69, 749 A.2d 1147 (2000).
In objecting to the motion, the plaintiff contends that he alleged actions in excess of the defendants' statutory authority, although he fails to point to any specific allegations. "[I]n order to overcome CT Page 12558 sovereign immunity, the [plaintiff] must do more than allege that the defendants' conduct was in excess of their statutory authority; they also must allege or otherwise establish facts that reasonably support those allegations." Id., 174-75. In the amended complaint, the plaintiff alleges that "[e]ach of the low-ranking defendants did wantonly, intentionally, willfully, maliciously and recklessly conspired, and acted with each other, to directly or indirectly deprive the plaintiff of his procedural due process and equal protection of the laws, and in furtherance of that conspiracy, the low-ranking defendants committed and executed a vicious, relentless and continuing campaign of harassment, terroristic threats of violence and death, retaliation, stalking, taunting, ridicule, racial slurs, verbal abuse, blacklisting, discrimination, and disparaging treatment and practices, breach-of-contract, bad-faith issuance of written DOC disciplinary reports, plots to frame the plaintiff in DOG disciplinary administrative actions, aiding and abetting in said harassment campaign, all to intentionally inflict emotional distress and mental anguish of a severe kind upon the plaintiff." (Amended complaint, ¶ 2.)
In the counts of the complaint directed against each of the low ranking DOC officials, the plaintiff alleges specific incidents of conduct to support the above allegation. See, e.g., count five (wherein the plaintiff incorporates allegations in paragraphs 44-47, in which a correctional officer allegedly said that the plaintiff should be killed); count twenty-four (wherein the plaintiff incorporates allegations in paragraphs 118-119, in which another correctional officer allegedly told the plaintiff that he was a "dead man").
The plaintiff further alleges that "[e]ach of the named high-ranking defendants did wantonly, intentionally, willfully, maliciously and recklessly conspired, participated and acted with each other to directly or indirectly to deprive the plaintiff of his procedural due process and equal protection of the laws, and in furtherance of that conspiracy and participation, the named high-ranking defendants acted with deliberate indifference and at times committed and participated in the cover-up to wrongfully protect and shield the named low-ranking defendants in their criminal and systematic campaign to deprive the plaintiff of his constitutional rights." (Amended complaint, ¶ 4.) If the facts alleged in the amended complaint sounding in intentional infliction of emotional distress are proven, a fact finder could infer that the low ranking DOC employees engaged in a campaign to terrorize, intimidate and threaten the plaintiff and that the high ranking officials, at best, acquiesced in the campaign and, at worst, participated in the intentional infliction of emotional distress. "These inferences would be sufficient to establish that the defendants' conduct was sufficiently egregious to constitute conduct that was in excess of their statutory authority." ShayCT Page 12559v. Rossi, supra, 253 Conn. 180.[1]
 II. Statutory Immunity
"Our precedents establish that, where a state official is sued in both her official and individual capacities, if sovereign immunity does not apply to the claim against her in her official capacity, the statutory immunity may then apply to the claim against her in her individual capacity. Thus, before determining whether and to what extent the defendants are shielded by the statutory immunity provided by § 4-165, it is appropriate to determine whether the claims against them are barred by the common law doctrine of sovereign immunity." Shay v. Rossi, supra,253 Conn. 162-63.
Pursuant to the foregoing discussion, the court concludes that the intentional infliction of emotional distress claims against the defendants are not barred by the common law doctrine of sovereign immunity. The next determination to be made is whether the plaintiff's claims against the defendants in their individual capacities are barred by the statutory immunity provided by General Statutes § 4-165. Section 4-165 provides, in pertinent part: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter . . ."
General Statutes § 4-165, therefore, bars personal actions against state officers and employees, except for alleged damage or injury caused by wanton, reckless or malicious conduct by the officer or employee. "We have never definitively determined the meaning of "wanton, reckless or malicious' as used in § 4-165. In the common-law context, however, we have stated: "In order to establish that the defendants' conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts. . . . [Such conduct] is more than negligence, more than gross negligence. . . . [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. . . ." We see no reason to give a different meaning to that phrase as used in § 4-165." (Citations omitted.) ShayCT Page 12560v. Rossi, supra, 253 Conn. 181-82.
In the present case, the plaintiff alleges that the defendants' wilfully, wantonly, intentionally, maliciously and recklessly undertook the actions causing him severe emotional distress. Therefore, the same allegations that lead the court to conclude that the defendants acted outside their statutory authority can also lead a fact finder to conclude that the defendants acted wantonly, recklessly or maliciously.
Accordingly, because the court has subject matter jurisdiction over the claims for intentional infliction of emotional distress and the court finds that both the common law doctrine of sovereign immunity and statutory immunity fail to shield the defendants from these claims, the defendants' motion to dismiss the plaintiff's intentional infliction of emotional distress claims must fail.[2]
 III. Money Damages Under Connecticut and United States Constitutions
The defendants argue that the plaintiff lacks standing to bring a tort cause of action for money damages based on a violation of the plaintiff's rights under the Connecticut and United States constitutions because only a narrow class of such actions has been recognized by the courts. "[S]tanding . . . implicates a court's subject matter jurisdiction, which may be raised at any point in judicial proceedings." Stamford Hospitalv. Vega, 236 Conn. 646, 656, 674 A.2d 821 (1996). "The fundamental aspect of standing . . . [is that] it focuses on the party seeking to get his complaint before [the] court and not on the issues he wishes to have adjudicated. . . . Standing is not a technical rule intended to keep aggrieved parties out of court. . . . Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . The requirements of justicibility and controversy are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. . . . As long as there is some direct injury for which the plaintiff seeks redress, the injury that is alleged need not be great. . . . Where the nexus between the injury and the claim sought to be adjudicated is obvious and direct, a plaintiff has standing to maintain the claim." (Citations omitted; internal quotation marks omitted.) Gay Lesbian LawStudents v. Board of Trustees, 236 Conn. 453, 463-64, 673 A.2d 484
(1996).
In objecting to the motion, the plaintiff argues that Binette v. Sabo,
supra, 244 Conn. 23, applies to the conduct of the DOC officers in the CT Page 12561 present case. The issue before the court in Binette was whether "the Connecticut constitution gives rise to a private cause of action for money damages stemming from alleged violations of article first, §§ 7
and 9, of our state constitution."[3] Id., 25-26. The court answered that question in the affirmative. Id., 26.[4] "Binette did not purport to announce an overarching universal principle. . . . It cautioned that the availability of access to a separate tort action under Binette should be analyzed on a case-by-case basis only." (Citation omitted.) Martin v.Brady, 64 Conn. App. 433, 439, ___ A.2d ___ (2001). In Binette v. Sabo,
supra, 244 Conn. 33, the Supreme Court held that it possesses the authority to create a damages action under the state constitution, "whether derived from a statutory provision. . . . or rooted in the common law." (Citations omitted.) Id. The Supreme Court has recognized a damages action under the Connecticut constitution, article first, §§ 7
and 9. "[W]e emphasize that our decision to recognize a Bivens-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution." Id., 46. In the present case, the plaintiff cannot point to any other provision under the state constitution where a separate tort action has been recognized.
Similarly, in Bivens v. Six Unknown Agents of the Federal Bureau ofNarcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the United States Supreme Court held that a cause of action for damages existed under the fourth amendment to the United States constitution.[5] Id., 389. The plaintiff in the present case fails to allege any cause of action for damages under the fourth amendment to the United States constitution.[6] As the plaintiff points out, however, "the United States Supreme Court also has recognized constitutional tort actions for violations of rights protected under the fifth and eighth amendments to the United States constitution. See, e.g., Carlson v. Green, 446 U.S. 14, 17-23, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (allowing damages action against federal prison officials for violations of eighth amendment
prohibitions against cruel and unusual punishment, notwithstanding availability of damages under Federal Tort Claims Act, where no special factors counseled hesitation and Congress had neither prohibited damages nor expressly provided another, equally effective remedy); Davis v.Passman, 442 U.S. 228, 245-48, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (permitting damages action for violation by Congressman of fifth amendment
due process guarantee in context of alleged wrongful discharge of employee, where Congress had not precluded damages, equitable relief would be unavailing, and fact that official was Congressman, while special factor counseling hesitation, was not sufficient to defeat claim). More recently, however, the court has responded cautiously to suggestions that Bivens remedies be extended into new contexts. FederalDeposit Ins. Corp. v. Meyer, 510 U.S. 471, 484, 114 S.Ct. 996,127 L.Ed.2d 308
(1994), quoting Schweiker v. Chilicky, 487 U.S. 412, 421, 108
CT Page 12562 S.Ct. 2460, 101 L.Ed.2d 370 (1988). In particular, the court, in recognition of the principle of separation of powers, has been reluctant to create a federal constitutional damages action where Congress implicitly has expressed a preference for an alternative remedy. For example, the court has declined to allow a Bivens remedy for an alleged wrongful deprivation of social security benefits; Schweiker v. Chilicky,
supra, 423; or for an alleged violation of a federal employee'sfirst amendment rights; Bush v. Lucas, 462 U.S. 367, 388, 103 S.Ct. 2404,76 L.Ed.2d 648 (1983); because Congress had enacted a comprehensive legislative scheme providing meaningful remedies for those violations even though the remedial legislation did not afford complete relief to the plaintiff. See Schweiker v. Chilicky, supra, 425; Bush v. Lucas,
supra, 388. . . . We emphasize, however, that although the United States Supreme Court has been unwilling to create a constitutional damages remedy in cases where Congress already has provided a remedy or where other special factors militate against doing so; see McCarthy v.Madigan, 503 U.S. 140, 151, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) . . . the court has not retreated from its core holding in Bivens." Binette v.Sabo, supra, 244 Conn. 37-39.
In the present case, the defendants counter the plaintiff's argument regarding creation of a cause of action for damages under the state and federal constitutions by pointing out that Congress and the state legislature created alternative remedies. The plaintiff may bring a claim for money damages against the state under General Statutes §§ 4-141
through 4-165b by filing his claims with the claims commissioner. He may also bring any claims for violation of his civil rights under42 U.S.C. § 1983. The plaintiff does not, nor can he, argue that he has pursued his remedies under these statutes prior to asking this court to recognize a cause of action for damages against the defendants under the state and federal constitutions. This court, therefore, declines to recognize damages actions under the Connecticut and United States constitutions under the circumstances of this case.
 IV. Violations of Connecticut Statutes
As to the plaintiff's claims against the defendants that they violated various Connecticut statutes, these claims are brought under the Connecticut penal statutes and are improperly before this court in the plaintiff's civil action. Accordingly, those claims in which the plaintiff alleges that various defendants violated the criminal statutes are dismissed.
 V. Violations of Federal Statutes
In his objection, the plaintiff argues that the plaintiff's claims CT Page 12563 under 42 U.S.C. § 1983 for violations of his federal constitutional rights are not barred and are valid. The plaintiff makes no claims under42 U.S.C. § 1983. Rather, he brings his claims pursuant to "the Civil Rights of Institutionalized Person Act,42 U.S.C. § 1997a (c) through 1997e
and Title 28 Code of Federal Regulations 40." (Complaint, count ten, ¶ 273, for example.) Title 29 of the Code of Federal Regulations interprets 42 U.S.C. § 1997a-1997e. The statute provides: "(a) Discretionary authority of Attorney General; preconditions. Whenever theAttorney General has reasonable cause to believe that any State or political subdivision of a State, official, employee, or agent thereof, or other person acting on behalf of a State or political subdivision of a State is subjecting persons residing in or confined to an institution, as defined in section 1997 of this title, to egregious or flagrant conditions which deprive such persons of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States causing such persons to suffer grievous harm, and that such deprivation is pursuant to a pattern or practice of resistance to the full enjoyment of such rights, privileges, or immunities, the Attorney General, for or in the name of the United States, may institute a civil action in any appropriate United States district court against such party for such equitable relief as may be appropriate to insure the minimum corrective measures necessary to insure the full enjoyment of such rights, privileges, or immunities, except that such equitable relief shall be available under this subchapter to persons residing in or confined to an institution as defined in section 1997(1)(B) (ii) of this title only insofar as such persons are subjected to conditions which deprive them of rights, privileges, or immunities secured or protected by the Constitution of the United States. . . . (c) Attorney General to personally sign complaint." (Emphasis added.)
The statute further provides: "(a) Applicability of administrative remedies. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. (b) Failure of State to adopt or adhere to administrative grievance procedure. The failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under section 1997a or 1997c of this title. (c) Dismissal. (1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. (2) In the event that a claim is, on its face, frivolous, CT Page 12564 malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." 42 U.S.C. § 1997e.
In the present case, the plaintiff's claims against the defendants under 42 U.S.C. § 1997a through 1997e is not brought by the attorney general of the United States in federal court, nor is the plaintiff bringing his claims pursuant to 42 U.S.C. § 1983. Under42 U.S.C. § 1997a, only the Attorney General can determine the existence of prerequisites to file suit under the Civil Rights of Institutionalized Persons Act (CRIPA)." Messier v. Southbury TrainingSchool, 916 F. Sup. 133, 137 (D.Conn. 1996).
Accordingly, the plaintiff fails to have standing to bring his claims under 42 U.S.C. § 1997a through 1997e to this court and his claims against the defendants under this statute are, therefore, dismissed.
 CONCLUSION
In accordance with the foregoing discussion, as to those defendants that are named in the plaintiff's original complaint the court hereby denies defendants' motion to dismiss the plaintiff's claims against the defendants for intentional infliction of emotional distress because the court has subject matter jurisdiction to hear those claims and is not barred by either sovereign immunity or statutory immunity from hearing the claims. The court hereby grants, as to such defendants, the defendants' motion to dismiss the remainder of the plaintiff's claims because the plaintiff lacks standing to bring the claims, thereby depriving the court of subject matter jurisdiction to hear the causes of action.
As to those defendants that were purportedly added by virtue of the plaintiff's amended complaint, since they are being sued in both their individual and official capacities, and for money damages, the Attorney General's Office is apparently not authorized to file an appearance for them. Since they have not been added as defendants nor have they properly been cited in as defendants in this case, it must be dismissed as to them.
Therefore as to Vincent Santopietro, John Shoemaker, E. Saundry, John Capasso, John Doe #3, John Austin, John Pelkey, David G. Testa and John Tolisano, the motion to dismiss is granted as to all the claims set forth in the amended complaint.
By the Court, CT Page 12565
Bruce W. Thompson, Judge